IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CALVIN CHILDS-BEY,                    *

        Plaintiff,                    *

v.                                    *          Civil No. TJS-10-2835

MAYOR AND CITY COUNCIL OF             *
BALTIMORE,
                                      *
        Defendant.
                    *      *      *      *      *      *

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case[1] concerns the Plaintiff Calvin Childs-Bey's ("Plaintiff" and "Mr. Childs-Bey")

employment by the Baltimore City Department of Public Works ("Defendant").  The basic facts

underlying Plaintiff's claim are not in dispute.  Mr. Childs-Bey worked for the Defendant's

Bureau of Water and Waste Water from 2005 through March 2010.  During the time that he was

employed there, he raised a number of complaints concerning Defendant's practices that he

believed to be discriminatory on the basis of race.  In 2009, Plaintiff alleges that a supervisor

drove a vehicle into the path of his vehicle in an act of retaliation for his complaints about racial

discrimination. Plaintiff also alleges that Defendant discriminated against him because of his

disability, and failed to provide reasonable accommodation for his disability.

On June 16, 2011, Judge Legg issued an opinion dismissing a number of Plaintiff's

claims pursuant Fed. R. Civ. P. 12(b)(6).  (ECF No. 35).  The Court allowed two claims to

_____

[1] This case was originally assigned to Judge Benson E. Legg, who is now retired.  On
July 3, 2012, it was reassigned to Judge George L. Russell, III.  On February 13, 2013, with the
consent of the parties, it was reassigned to me for all proceedings and the entry of judgment in
accordance with 28 U.S.C. § 636(c).  (ECF No. 112).

proceed: Mr. Childs-Bey's Title VII Retaliation claim, 42 U.S.C. § 2000e *et seq.*, alleging that

his "supervisor attempted to 'run him off the road' in retaliation for complaining about

discrimination" and his related claims under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and

the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"),

which allege that Defendant failed to accommodate his disabilities and "treated him differently

(disparately) because of his disabilities." (ECF No. 35 at 2). Pending before the Court is

Defendant's Motion for Summary Judgment as to those two claims. The Court has considered

the submissions of the parties (ECF Nos. 121, 133, 135, 136, 137 & 140) and finds that no

hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, Defendant's Motion is

granted as to each claim. This Memorandum Opinion resolves ECF No. 121.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any

material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Dash v. Mayweather*, No. 12-1899, 2013 WL 5365967 (4th Cir. Sept. 26, 2013). The party

moving for summary judgment bears the burden of demonstrating that no genuine dispute exists

as to any material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

In reviewing a motion for summary judgment, the Court considers the evidence in the light most

favorable to the non-moving party. *Ricci v. DeStafano*, 557 U.S. 557, 585 (2009).

If the moving party demonstrates that there is no evidence to support the non-moving

party's case, the burden shifts to the non-moving party to identify specific facts showing that

there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To

satisfy this burden, the non-moving party "must produce competent evidence on each element of

his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.* (citing *Anderson*, 477 U.S. at 255; *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817–18 (4th Cir. 1995)). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

## III. PLAINTIFF'S TITLE VII RETALIATION CLAIM

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [Title VII]." 42 U.S.C. § 2000e-3(a). The Fourth Circuit has "held that opposition activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).

To succeed on a Title VII retaliation claim, a plaintiff must show that (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) there is a causal relationship between the protected activity and the employer's adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Recently, in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court examined which causation

standard applies to Title VII retaliation claims. *Id.* The Court noted that given the "ever-increasing frequency" with which retaliation claims are filed, resolution of the causation standard applicable to such claims was a question of "central importance to the fair and responsible allocation of resources in the judicial and litigation systems." *Id*. at 2531. The Court noted that if a lessened causation standard were found to apply to such claims, it "would make it far more difficult to dismiss dubious claims at the summary judgment stage." *Id*. at 2532. The Court held that "Title VII retaliation claims must be proved according to the traditional principles of but-for causation" and require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 2533. To establish a "but-for" causal relation, a plaintiff must now prove that "the desire to retaliate was the 'but-for' cause" of the adverse action taken against him. *Id.* at 2528; *see Mallik v. Sebelius*, No. PWG-12-1725, 2013 WL 4559516 (D. Md. Aug. 28, 2013) ("This means that the employer would not have taken the adverse employment action against the plaintiff if the employer were not trying to retaliate against the plaintiff for engaging in a protected activity.").

Preliminarily, Defendant contends that the Court "does not have jurisdiction to hear Plaintiff's claims for Retaliation under Title VII" because Plaintiff has failed to satisfy the "administrative prerequisites" for filing such a claim. (ECF No. 121-1 at 9). Plaintiff argues that his submission of an August 31, 2011 "Right to Sue" letter "cured all jurisdictional deficiencies" with respect to the retaliation claim. (ECF No. 133-1). While neither party has satisfactorily briefed this issue, there is some authority that supports Plaintiff's contention. *See Veliaminov v. P.S. Bus. Parks*, 857 F. Supp. 2d 589, 590 (E.D. Va. 2012). For purposes of resolving Defendant's Motion for Summary Judgment, the Court assumes that Plaintiff has cured all jurisdictional deficiencies alleged by Defendant.

With regard to the first element of Plaintiff's retaliation claim, Plaintiff complained about a number of practices of his employer that he believed to be discriminatory on the basis of race.[2] Because it is beyond dispute that Plaintiff made numerous complaints about the practices of Defendant that be believed were discriminatory on the basis of race, Plaintiff has established the first element of his Title VII retaliation claim.

As to the second element, Plaintiff claims that "[o]n February 21, 2009, [Marvin Payne, Plaintiff's supervisor] attempted to run [Plaintiff] off the road while [Plaintiff] was driving [his] personal vehicle in retaliation for complaining about discrimination." (ECF No. 13 at 3). To support this allegation, Plaintiff relies on a report he made to Business Health Services on February 24, 2009. (ECF No. 133-3 at 28). In this report, Plaintiff states that on February 21, 2009, Mr. Payne "continue[d] to harass" Plaintiff by "[taking] his car and [trying] to block[]" Plaintiff in "with his car after taking the battery out [of] the truck knowing it was [Plaintiff's] weekend to work." *Id.* Plaintiff also relies on a transcript of a proceeding that took place before the Maryland Workers' Compensation Commission. (ECF No. 133-3 at 29-57). During that hearing, Plaintiff testified that on February 21, 2009 he reported to the gates near the Loch Raven Reservoir ("the dam"). (ECF No. 133-3 at 38). Upon arriving, he discovered that the vehicle he intended to use was missing its battery and was inoperable. (ECF No. 133-3 at 39). Unable to contact his supervisor, Mr. Payne, Plaintiff reported the battery as stolen to the police, who arrived shortly thereafter to prepare a report. (ECF No. 133-3 at 39). After the police arrived, Mr. Payne called Plaintiff back and informed him that the battery had not been stolen, but had

---

[2] Plaintiff does not describe himself (and Mr. Payne) as African-American, but rather as "Asiatic" or "Moorish." (ECF No. 121-3 at 6) ("There's no such thing as . . . [an] African-American. . . . According to all true and divine human records because before the 17[th] Century, there wasn't no such thing as [an] African-American. They weren't even a part of the human family.").

been removed by Plaintiff's coworkers. (ECF No. 133-3 at 39). Mr. Payne told Plaintiff that he should go home. (ECF No. 133-3 at 39). Plaintiff stated that while driving home, Mr. Payne "come and took my right of way. He came across the double solid lines and took my right of way, and I just steered off, went over the embankment because there wasn't a guardrail. I didn't want to have no accident." (ECF No. 133-3 at 41). Even assuming Plaintiff's allegation that Mr. Payne attempted to "run Plaintiff off the road" is true, it is unlikely that this would constitute an "adverse employment action" contemplated by Title VII. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). Nevertheless, the Defendant's memoranda seems to simply assume that that this conduct constitutes an actionable "adverse employment action." For the purposes of this opinion, the Court will assume that it does as well. Plaintiff has therefore met the second element of his retaliation claim.

At bottom, Plaintiff's retaliation claim fails because he is unable to meet the third element. Plaintiff has not shown that Mr. Payne's actions (causing him to drive his vehicle off the road) were taken only for purposes of retaliating against Plaintiff for filing an EEOC complaint. While there is close temporal proximity between the day Plaintiff filed his complaint (February 3, 2009) and the day Mr. Payne and Plaintiff passed one another on the road to the dam (February 21, 2009), this is not significant in light of Plaintiff's testimony that Mr. Payne had been "aggressive" with Plaintiff since at least July 14, 2008. (ECF No. 133-3 at 47) (recounting Plaintiff's time as an acting supervisor and Mr. Payne reporting to "safety" that the job Plaintiff requested him to do was unsafe). In December 2008, for example, Plaintiff recounts that Mr. Payne directed him to use a snow plow to pick up pine needles, which Plaintiff perceived as "real outrageous." (ECF No. 133-3 at 47) ("In December he got real outrageous. He would like take the cars and make, like I said, make me do pine needles. We never did pine

needles with a snow plow. We never picked up loose trash with a big dump truck. We would do stuff that was outrageous and abnormal. I was reporting to the union and I was reporting to my bosses, which was not doing nothing. He would slam doors in my face."). In addition, Plaintiff testified that his workplace was one that had long been filled with violence, including incidents involving "knives, shotgun shells" and signs with racial threats. (ECF No. 133-3 at 49). As dubious as these claims may be,[3] they only serve to undermine any argument Plaintiff may have had that his complaint was the "but-for" cause of Mr. Payne driving into his lane of travel on February 21, 2009.[4] Even taking Plaintiff's allegations as true, after he filed his complaint, Plaintiff was not treated differently from before he filed it. He has certainly failed to show that a desire to retaliate against Plaintiff for his having filed an EEOC complaint "was the but-for cause" of Mr. Payne's actions. *See Nassar*, 133 S. Ct. at 2528.

In addition, Plaintiff fails to put forward any evidence linking the incident on the road to the dam to his complaint. Recently, the Seventh Circuit succinctly stated how a plaintiff's retaliation claim may survive summary judgment. *Hobgood v. Illinois Gaming Bd.*, 722 F.3d 1030 (7th Cir. 2013). *Hobgood* noted that it is rare for a plaintiff to be able to point to direct evidence of causation ("something akin to an admission from the [employer] that it took action against [the plaintiff] because of his protected activity"). *Id.* Plaintiffs are more often able to piece together a "convincing mosaic of circumstantial evidence" that "when taken as a whole and

---

[3] For example, an investigator employed by Defendant charged with investigating allegations of violence in the workplace testified that the knives Plaintiff refers to were retrieved by his coworkers from the "woods or wherever they were working. And they brought them back to the . . . operational center. And that these knives had been put up in a kitchen cabinet there. And Mr. Bey felt as though these knives weren't authorized to be there and complained about them." (ECF No. 121-4 at 3).

[4] Mr. Payne testified that on February 21, 2009, he passed Plaintiff as he left the dam. Mr. Payne "pulled off to get his attention to stop." Plaintiff did not stop to talk to Mr. Payne, but rather drove around his vehicle and continued on his way. (ECF No. 133-3 at 54).

viewed in a light favorable [to the non-movant], could convince a reasonable jury that [the plaintiff] was the victim of unlawful retaliation." *Id.* at 1038 (internal quotation omitted) (noting that this circumstantial evidence might include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action"). While the cases "in which a plaintiff does not have a convincing mosaic, but only one 'bit' or 'piece' . . . are legion," a court evaluating a plaintiff's "mosaic of circumstantial evidence" must consider the evidence as a whole. *Id.* *See also Finnie v. Lee Cnty., Miss.*, No. 12-60623, 2013 WL 4852244 (5th Cir. Sept. 12, 2013) (finding that no reasonable juror could "conclude that [plaintiff's] filing of an EEOC claim was the "but-for" cause of her termination, that, had she not filed the claim, she would have remained in her position at the Lee County Detention Center"); *Verma v. Univ. of Pennsylvania*, No. 12-2799, 2013 WL 4010237 (3d Cir. Aug. 7, 2013) ("Contrary to Appellant's assertions, she has presented no evidence that suggests any causal connection between her allegations of discrimination and her termination, let alone evidence to suggest that such activity was the but-for cause of her termination."); *Coleman v. Jason Pharm.*, No. 12-11107, 2013 WL 5203559 (5th Cir. Sept. 17, 2013) ("Coleman has fallen well short of showing 'a conflict in substantial evidence' on the question of whether a retaliatory motive was the but-for cause of her termination."); *Huggins v. N.C. Dep't of Admin.*, No. 5:10-CV-414-FL, 2013 WL 5201033 (E.D.N.C. Sept. 13, 2013) (granting defendant's motion for summary judgment as to retaliation claim because plaintiff's "scant evidence with respect to causation" fell "short of proving, by a preponderance of the evidence, that retaliation was the 'but-for' cause of her being placed on investigatory leave and

subsequently terminated"). In this case, Plaintiff has failed to cite to any evidence that demonstrates any causal nexus between his protected activity and Mr. Payne's conduct, let alone the "but-for" proof of causation that *Nassar* now requires. Instead, Plaintiff offers conclusory allegations based on his assumptions, which are unsupported by any admissible evidence.

Accordingly, the Court finds that no reasonable juror could determine that Mr. Payne's conduct would not have occurred if Plaintiff had not complained of his employer's conduct. Thus, Plaintiff fails to establish a *prima facie* case as to his Title VII Retaliation claim. Defendant is entitled to judgment as a matter of law on this claim.

## IV.     PLAINTIFF'S REHABILITATION ACT AND ADA CLAIMS

In its reply brief, Defendant complains that even after Judge Legg "crafted Plaintiff's . . . Amended Complaint into a coherent set of claims, it is still unclear . . . what wrongs Plaintiff believes he has suffered." (ECF No. 135 at 2). Defendant's point is well taken. The Court, with little assistance from the Plaintiff's submissions,[5] will set forth below its understanding of the ways in which Mr. Childs-Bey believes he was not reasonably accommodated or was discriminated against by the Defendant because of his disability. Under each of these theories, Plaintiff's claims fail.

_____

[5] In Plaintiff's Opposition brief, he cites generally to eleven exhibits that he contends support his contention that Defendant discriminated against him on the basis of his disability. (ECF No. 133-1 at 17). Mr. Childs-Bey goes on to state that "[f]actual issues abound with respect to Plaintiff's disability discrimination claim," but fails to cite to any specific facts that support his discrimination claims. The Court has reviewed each page of the exhibits submitted by Plaintiff and finds that his position is utterly lacking in factual support.

## A.     Failure to Accommodate

Plaintiff claims that Defendant failed to accommodate him, as required by the Rehabilitation Act and the ADA.[6]  To establish a *prima facie* case for failure to accommodate, an employee must show: (1) that he was an individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such accommodations.  *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *see also Bryant v. Better Business Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 733 (D. Md. 1996).  "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."  *Haneke v. Mid-Atlantic Capital Management*, 131 Fed. Appx. 399 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(*o*)(3)).

Plaintiff's failure to accommodate claim fails because, even assuming that he could establish the first two elements, he cannot establish that any "reasonable accommodation" was necessary to permit him to "perform the essential functions of [his] position" or that Defendant failed to make such accommodations. *See Rhoads*, 257 F.3d at 387.  It bears mentioning that it is the obligation of the parties, not the Court, to locate and cite to the appropriate portions of the record that support the parties' arguments on summary judgment.  *Johnson v. United States*, 861 F. Supp. 2d 629, 634-35 (D. Md. 2012) (citing *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994)).  Here, Plaintiff has directed the Court to numerous parts of the record that flatly indicate that he was able to perform the essential functions of his

---

[6] The provisions of these acts are nearly identical, *see, e.g. Baucom v. Potter*, 225 F. Supp. 2d 585, 591 (D. Md. 2002), and "courts often look to case law interpreting the one act to construe the provisions of the other." *Id*.

position and that no ADA accommodations were required.[7]  In a July 2009 Psychological Evaluation cited by Plaintiff, Dr. James McGee found that Plaintiff was "in a state of emotional turmoil and afflicted by acute and intense feelings of anxiety and depression."  (ECF No. 133-4 at 39).  Dr. McGee found that "if he is compelled to return to his current workplace, there is potential for significant escalation to include possible physical violence" against Plaintiff's co-workers.  (ECF No. 133-4 at 39).  Dr. McGee recommended that Plaintiff should not return to his current work location, and should be reassigned to a new location if feasible.  (ECF No. 133-4 at 39).  This evaluation offers no support to Plaintiff's claim because it is concerned with the dangers Plaintiff posed to his coworkers, and not with Plaintiff's ability to perform the essential functions of his position.

In an August 14, 2009 report cited by Plaintiff, Dr. Tara Herbert stated that "[Plaintiff] is physically able to perform all duties described . . . and his depressive symptoms are controlled."  (ECF No. 133-4 at 44).  Dr. Herbert noted that Plaintiff's condition "may again be exacerbated if subjected to undue psychological stressors in the workplace" and "he would benefit from being apart from his previous supervisor due to the significant stressors experienced but can perform all essential duties of his job."  (ECF No. 133-4 at 46).  This report undermines Plaintiff's claim because it expressly indicates that Plaintiff was able to perform the essential duties of his position.  Dr. Herbert's recommendation that Plaintiff "would benefit from being apart from his previous supervisor" may indeed have been well taken, but such accommodation was not necessary to permit Plaintiff to perform his job.

Plaintiff also cites to the August 2009 recommendation of Defendant's ADA Coordinator to support the proposition that "Defendant even ignored the recommendation of its own ADA

---

[7] Plaintiff's interpretation of Exhibit X and Exhibit Y (ECF No. 133-4 at 43-49 & 50-52) is at odds with the very content of these exhibits. (ECF No. 133-1 at 17).

Coordinator." (ECF No. 133-1 at 17). The document Plaintiff cites, however, cuts directly against his own argument. In it, Defendant's ADA Coordinator states that, according to the opinions of medical professionals who had examined Plaintiff, "at this time no ADA accommodations are needed." (ECF No. 133-4 at 52).

In October 2009, after it was determined that Plaintiff was unable to satisfy the requirements to obtain a Commercial Driver's License,[8] Plaintiff was informed that "[i]n light of [his] inability to maintain a CDL, [he had] until February 4, 2010" to take a number of corrective steps, including taking sufficient corrective action to remedy or cure the reason stated for his disqualification, providing a statement from a Board Certified Physician stating that his disqualifying condition has been cured, or applying for an alternative employment position. (ECF No. 133-5 at 11). Soon after receiving this letter, Plaintiff was hired to work "for the Water Treatment Grounds Maintenance Section under Ms. Paul Keys," but was not "permitted to operate City vehicles until the matter regarding [Plaintiff's] CDL license [was] resolved." (ECF No. 133-5 at 13). To the extent that any accommodation under the ADA was necessary – and the Court is satisfied that no such accommodation was required – Defendant certainly satisfied that obligation by providing Plaintiff an employment opportunity where he would work under a different supervisor until his CDL was reinstated. For these reasons, Plaintiff has failed to establish a *prima facie* case for failure to accommodate and Defendant is entitled to summary judgment on this claim.

---

[8] In support of his argument that his Commercial Driver's License ("CDL") was not expired, Plaintiff submits an illegible copy of what appears to be an identification card or driver's license. (ECF Nos. 133-1 at 8 & 133-5 at 2). It appears to the Court that Plaintiff's CDL had lapsed because Plaintiff failed to take the steps necessary to satisfy Defendant's Fitness for Duty requirements. (ECF No. 133-5 at 9).

## B. Disability Discrimination

Finally, Plaintiff claims that Defendant discriminated against him on the basis of his disability, in violation of the ADA. *See* 42 U.S.C. § 12112 The Fourth Circuit has held that "to establish a violation of the ADA, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). Where there is no direct evidence of discrimination and the defendant denies any discriminatory reasons for terminating the plaintiff, the three-step method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). First, Plaintiff "must establish, by a preponderance of the evidence, a *prima facie* case of discrimination." *Id.* If Plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to Defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was [rejected from receiving the benefit in question] for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If Defendant rebuts the presumption of discrimination, Plaintiff bears the burden of proving intentional discrimination. *Halperin*, 128 F.3d at 196.

Here, Plaintiff fails to demonstrate a *prima facie* case of discrimination.[9] In response to Defendant's Motion for Summary Judgment, Plaintiff argues that "whether Plaintiff's depression

---

[9] While the Court addresses Plaintiff's disability discrimination claim on the merits, it is far from clear that the Court has jurisdiction to hear this claim. Plaintiff was required to file an EEOC charge prior to instituting this suit. *See* 42 U.S.C. § 12117(a). A plaintiff's claims in his judicial complaint must be reasonably related to her EEOC charge such that they would be developed by reasonable investigation of the original charge. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Plaintiff apparently filed three EEOC charges, but none of them reference any discrimination due to his disability. Plaintiff's submissions

was a disability under the ADA . . . is a fact issue not addressed at all in the moving papers." (ECF No. 133-1 at 17). Even assuming that his depression constituted a disability,[10] Plaintiff cannot demonstrate any benefit he was entitled to that Defendant excluded him from. As set forth above, Plaintiff's CDL had lapsed and he did not take the corrective steps necessary to have it reinstated (or he did not qualify for its reinstatement). Plaintiff has provided no admissible evidence to the contrary. Aside from the dispute over Plaintiff's CDL, there is no evidence that supports Plaintiff's contention that he was deprived of any benefit. Even if Plaintiff had shown that he had been deprived of any benefit, there is nothing in the evidence cited to indicate that such deprivation was because of his disability. Plaintiff was a troubled employee, ultimately terminated for punching a coworker in the face and for failing to obtain his CDL. Plaintiff's "unsubstantiated allegations and bald assertions" are not sufficient to create a genuine issue of material fact of disability discrimination. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## V.    CONCLUSION

For the reasons set forth above, Plaintiff is unable to establish a *prima facie* case of Title VII Retaliation, a violation of the Rehabilitation Act or the ADA, or disability discrimination. Defendant is therefore entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment (ECF No. 121) is granted.

---

concerning the contents of his EEOC charges are incomplete and nearly unintelligible. Nonetheless, because the Court will rule against Plaintiff on the merits, the Court will assume that Plaintiff has established jurisdiction for his disability discrimination claim.

[10] The term "disability" is defined, with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

An order implementing this decision shall issue separately.


Date:   October 17, 2013                        _____/s/_____

                                                Timothy J. Sullivan
                                                United States Magistrate Judge